Mr. Brown, you may proceed. May it please the court, my name is Christy Brown. I'm from the Patterson Law Firm and I represent the plaintiff appellate in this case, Richard Doe. This case started when Mr. Doe was in fourth grade. He was riding his bike through a public park on a day off from school. He stopped to use the public washroom and was sexually assaulted in the washroom, as we've alleged in our complaint by John Dennis Hastert. We did not know at the time. For a fourth grader, this was an extremely confusing event. Confusing for a fourth grader today, but perhaps even more confusing for a fourth grader in the 1970s. This was the days before we were drumming Stranger Danger into our children's heads and they had access to all the news that we watch on TV. He spent his next eight years in that small community where Dennis Hastert was a beloved teacher and coach at the high school. He attended that high school. About the time he graduated that high school, Mr. Hastert got elected to the Illinois legislature. In 1984 or 85, Mr. Doe began to realize the nature of what had happened to him and that it was wrong. Not only that it was wrong, but that it wasn't his fault. He went to the state's attorney. He felt that that was an appropriate avenue to pursue to try to get some redress or some justice for his claim. But when he went to the state's attorney, he was told, you don't have a claim and if you bring it, I will prosecute you criminally and you will be civilly liable to Mr. Hastert. What is your position on when the statute of limitations began? I think the statute of limitations began to toll shortly before he went, began to run shortly before he went to see Mr. Ingeminson. That's when he knew that he was damaged and that damage had a wrongful cause. I think it was subsequently then told by equitable stockholding, fraudulent concealment or equitable tolling after he spoke with Mr. Ingeminson. Well, didn't he speak with the state's attorney after he had turned 20? He spoke with the state's attorney. He wasn't quite sure of the timing when he was 20 or 21. But it was after he had turned 20? Yes, Your Honor. And we've argued that the discovery rule applied until shortly before he went to talk to Mr. Ingeminson. And you're not alleging repressed memory in any way? Not specifically. We did, we have alleged that he pushed it down, but repressed memory in the sense that he had no memory at all that this happened until he saw a psychologist no more. I mean, how does this, how is this taken out of the holdings of Clay and Parks? I was pretty sure we would get there, Judge. I think the holdings of Clay and Parks are interesting because in the Clay case, which was the earlier case, the court made this comment that you're presumed to know that you're injured if you were sexually abused as a child. But in that case, that's not what their ruling was based on. In that case, they said that the plaintiff had alleged that there was a failure to fully discover the extent of her injuries. And so even though they made that statement, the statement that defendant in this case is relying on, they said that the plaintiff asserts that she did not discover until years later the full extent of her injuries. Not that she did not discover she was injured, but that she did not discover the full extent of her injuries. And if you take a look at the cases the Clay court was relying on, the Clay court actually relied on two cases from this district, Doe versus Montessori School. And in that case, the reason they talked about whether there was a presumed injury was because the plaintiff, who had been sexually abused as an infant, did not remember the incident. Her parents were aware of the incident, and they filed on her behalf before she turned 18. So the issue was, if we don't have a presumed injury, is her claim even right? If she doesn't know whether or not she's injured, is this claim right or should it be dismissed? And the plaintiffs in the third amendment complaint in that case, that's what they talked about, but then they said the plaintiffs in that case have not specifically alleged that an active child molestation even occurred. And so even though they discussed presumed injury, they dismissed on the basis that the pleading didn't even allege sexual abuse. They also relied on an insurance case, Scudder versus Hanover Insurance. And in that case, the issue with regard to presumed injury was that an insurance carrier was trying to apply an exclusion clause that said, if you perform intentional acts that you know are going to injure somebody, those are not covered by the policy. The insurer had molested four boys, and that's the context in which this court said, we're going to presume an injury from this intentional act because of the nature of the act. The boys had already made a claim, so it wasn't a situation where we were talking about whether or not they had a claim. It was the carrier that was trying to exclude coverage that was talking about whether you could assume that having committed this intentional act of abuse that there would be an injury. The next case that came up in the Supreme Court after the Clay case was the Parks case. And the Parks case is interesting as well, because once again, the court makes this comment, that in the case of childhood sexual assault, we're going to presume an injury. But then the same thing happens. That's not the basis of their ruling. This was a priest case, and in this case, the sexual abuse occurred between the time the young lady was 16 and 18. And she ended up pregnant. The priest physically abused her and poisoned her in order to precipitate an abortion. She was taken to the hospital at age 18 for a DNC after she lost the pregnancy. She had been beaten, she had been sexually abused, and at that time, she returned to her parents' house. So she got out from under his influence at age 18. She knew, of course, that she had had physical injuries as a result of his sexual assault. And that was the basis of that ruling. And it's interesting if you look at Justice Freeman's dissent in Clay. In the Parks case, he concurs, and he says, I still don't agree with this comment that you presume an injury, but clearly there are sufficient facts in this case that show that this individual was on notice that she had been abused and injured by that abuse. Neither of the Supreme Court cases overturned a First District case. They didn't comment on the First District case, the case of DP versus MJO. In that case, the court specifically held, the appellate court in the First District, that when you have belated discovery of the connection between abuse and injury, as well as instances where you have repressed memory, the discovery rule will apply. So I find it interesting that if what the Illinois Supreme Court was trying to say is that the discovery rule will never apply unless you have repressed memory, that they did not cite to this case and say, this case is wrong. It's only where you have repressed memory that we're going to find the discovery rule applies. Is that what you're arguing on behalf of your client, though, that he didn't connect the injuries with the abuse until he went to see the state's attorney? Shortly before that was when he became aware that he was suffering some emotional injuries and that they were the result of the abuse. He did not know before that. And when you're talking about emotional injuries in cases like this, in some cases you're talking about people who are hospitalized, suicidal, but in some cases you're talking about people who can't hold down a job, people who are repressed, people who flunk out of school. You're talking about things that a person between the ages of 18 and 20 might not necessarily associate with an incident of abuse when they were in fourth grade. So you're saying that you have to be fully cognizant of all your injuries until the discovery rule picks up. Not of all your injuries, but you have to be cognizant of the fact that your injury was wrongfully caused. In other words, I've got a 21-year-old. How many times have I said to him, you don't have a job because you're lazy? You don't have a job because you're not motivated? How many times has somebody in that age category felt sad or depressed? How many times have they struggled to and been in and out of college struggling to get by? Isn't that the subjective test that the Supreme Court was worried about in these cases, making it entirely that the discovery rule is based entirely on a subjective mind frame? Well, I think it's not based entirely on a subjective mind frame because you have to be reasonable. It has to be what a reasonably prudent person would have known or a reasonable person would have known. But in this case, I think you have to talk about a reasonable childhood sexual abuse victim. If, in fact, we were to find that the discovery rule did not apply, anything that happened with the State's attorney would be totally irrelevant, correct? Well, I think it would be hard for me to stand up here in front of you, Judge, and tell you that when he went to the State's attorney, he wasn't aware that he was injured and that the injury was wrong. No, no, my question is if, in fact, from the ages of 18 to 20, if that's the time frame, if, in fact, we were to determine that the discovery rule didn't apply and the statute of limitations started at 18, ended at 20, anything that happened with the State's attorney would be totally irrelevant. That's correct. Yeah, I'm not trying to say that when he went to the State's attorney, he wasn't aware of the abuse or that his injuries were wrongfully caused. I mean, obviously, if he went to someone for help, he had some knowledge of what was going on. And it's interesting to me. I appreciate your comment that the Supreme Court was trying to avoid, you know, this sort of subjective evaluation and the statute of limitations continuing forever. But subsequent to those decisions, I mean, we had a statute that was proposed and it was repealed within three years. So, clearly, the legislature wasn't concerned about these claims potentially being brought many years after they happened. Because if they had been concerned about that, they could have left a 12-year statute of repose in place, but they didn't. In his dissent in the Clay case, Justice Freeman said, it's uncontroversial that psychological dysfunction can occur without outside causative agent. Accordingly, I believe it is improper to hold as a matter of law that a plaintiff's awareness of any psychological distress automatically puts him on notice that his distress may potentially have an external causative agent, therefore starting the limitations period wrong. And that's what I was talking about before, that in this situation, I don't think somebody... And the Illinois Supreme Court cases and some of the other cases cited by counsel for defense are all talking about extended periods of abuse that extended into at least the victim's teens. And I think that's a very different situation to say, this person was abusing you for an extended period of time. You finally were out from under the control of that person, but you're telling us you didn't know you were abused. Yes? Just that bright light is very distracting. Sorry. So I think you have to take this plaintiff as you find him. I think he's a reasonable... He behaved reasonably under the circumstances. And when he went for help to a state's attorney, to somebody whose job it was to prosecute these claims, that's when we believe equitable tolling and equitable estoppel begin, because he is told, if you pursue this claim, I will prosecute you and throw you in jail. What did you allege about the equitable and the equitable estoppel, about the defendant's knowledge of the state's attorney's actions? What we allege was that the two were closely aligned, and we allege that Mr. Engelmanson did this on behalf of Mr. Eckstrom. Doesn't the defendant have to know of it or approve of it or facilitate it in some fashion? It's difficult for me to get at that when I can't take discovery, Your Honor. And I wasn't allowed to take discovery in this case. We had a motion to compel pending on the day the judge ruled on a motion to dismiss. He ruled on a motion to dismiss. He dismissed the case with prejudice. But you're aware of the case law in equitable estoppel that you have to show that the principal actually has knowledge. And we've alleged, I believe we've alleged that he had knowledge. I believe that's what we've alleged. I think we may have alleged it on information and belief, because, like I said, we've done some investigation in this case. But what's your factual basis for that allegation? Factual basis for the allegation is the connection between the two parties, is the participation in the campaign, and also to try to get at what would Dallas Ingmanson's motive be for trying to get rid of this case unless he was doing it on behalf of Mr. Pastner. But, again, this is a case where we weren't allowed to amend the complaint, we weren't allowed to take discovery, and so we had to move forward on the allegations we had. If the defendant's conduct and Ingmanson's conduct terminated with an ample time to allow your client to file a claim, I mean, your client still would have a reasonable period of time. I mean, you're talking about two incidents. One, an incident of coercion or whatever the case may be, from the defendant himself when your client was very young. Yes. And then one from Ingmanson when your client was 20. Right. Your client waited until he was 53 to file a lawsuit. Yes, sir. That's 33 years. And there's no allegation of any other contact between him and your client and the defendant or your client and Ingmanson between those things. That's correct. So what's a reasonable period of time under the case law, you know, that if the improper conduct stops at some point in time, your client has a reasonable period of time to assert his rights? Well, I think the improper conduct has to stop. I think the plaintiff has to have some notice or some realization that these misrepresentations aren't true. When did Ingmanson leave office? I'm not sure you know. Wouldn't that matter? I don't think so because my client was told, you're reporting this as a crime, you're going to be prosecuted, and you're going to be sued by Dennis Astert for defamation. So there really was no reason. And you have to remember that during this whole time, Dennis Astert is just rising in power. And during this time, we're seeing adult victims of sexual abuse who are harassed and terrorized into dropping their claims. So I don't think my client was in a position to question Dennis or to question Dallas Ingmanson's comment until he saw. I mean, in this case, we're aware, right, of four other victims. We're all aware from the news. None of them came forward before the indictment. Person A, Person B, Mr. Scott didn't come forward before the indictment. And Mr. Reinhart took it to his grave. Reinhold took it to his grave. I mean, there was a – my client was told, you can't pursue this client. When did your client first contact an attorney regarding civil litigation? My client first contacted an attorney regarding civil litigation. I'm not sure, Your Honor. I'd have to go back to my file and check,  Am I correct in assuming that when he contacted Mr. Ingmanson that your client was going to indicate that he wished to have a criminal prosecution instituted? Or did he go there thinking that he was going to have a civil prosecution instituted? I think he went there thinking that this is a lawyer in a position of power and he'll tell me what I should do. Well, I don't want to know what you think. I want to know if you know what did your client tell you, if you know. You're asking me to tell you what my client told me? Relative to his contact with Ingmanson. You said, I think. And I would like something a little bit more concrete than what you think. I'm just looking at a complaint, Judge, to see specifically how he worded it. Where he intended to report the crime. That's how he worded it in that complaint. Thank you. And you would agree that it was a criminal prosecution? I would agree that, yes, that's why he contacted a state's attorney. Okay. Was there any allegation that Mr. Ingmanson told him he did not have a civil claim? No. Mr. Ingmanson told him if he made accusations, Dennis Hastert would have a civil claim against him for defamation. But not that he was precluded from filing that? No. We have not alleged that Dallas Ingmanson told him he was precluded from filing a civil action. No, sir. Thank you, ma'am. Your time is up. You'll have an opportunity to make rebuttal. Mr. Ellis, you may proceed. Good afternoon, Justices. Counsel, and may it please the Court. The plaintiff turned 18 in 1982. He filed his case on May 26, 2017. To reverse Judge Comer, you would need to apply the discovery rule to the total period of time that passed between the plaintiff's 18th birthday to his 20th birthday, when he went to report the abuse as a crime. At that point, you would then have to apply the doctrine of equitable tolling for a period of an additional 31 years, from 1984 until May 28, 2015, when the defendant, I'm sorry, the plaintiff admits that any conceivable threat had been lifted. Even then, if you apply both of those doctrines to total the discovery period, you would also, in order to reverse Judge Comer, need to find that from May 28, 2015 to May 26, 2017, the plaintiff acted within a reasonable time by getting his complaint on file. Was the holding in DP affected by the Clay and Parks decisions? The holding in DP was not explicitly overruled by Clay or Parks. It does not appear that either side relied on DP in arguing either Clay or Parks. The holding of DP, however, is not reconcilable with the holdings of Clay and Parks. And to be clear, I do want to correct what Ms. Brown said. The holdings of Clay and Parks were based on the lack of any sort of repression allegations in those cases. Those cases, Parks held, when a childhood sexual abuse accuser, quote, was aware of the abuse as it occurred and does not allege that he repressed the members of that abuse, the limitations period begins to run at the time the plaintiff reaches the age of majority. Clay held the same opinion. DP, as you know, is a first district case. You're not bound by it. The second district did not follow DP when they ruled on the MEH case. And then there was another first district case after DP, Dill v. Carlson, which is cited heavily in our brief, which applied to Clay and Parks rulings to reach the same holding, which is not reconcilable with DP. That, if you have alleged that you were aware of the abuse that the plaintiff has here, as they concede, and you've not repressed the members of that abuse completely out of your mind, as the plaintiff has acknowledged here, and you haven't alleged repression, on the day that you turn 18, the statute of limitations begins to run. And that's because the law charges adults with the knowledge that sexual contact between a minor and an adult is wrong and causes injury. And at that point, the statute of limitations begins to run. Again, before I go any further, I just wanted to comment on something that Ms. Brown said. Again, the complaint before you does not allege that the defendant had any knowledge of Mr. Ewingson's comments or threats. The only thing that is alleged is that on information in the brief, those comments were made on his behalf. There is no knowledge that the defendant was a knowing principal. In the Barber v. South Chicago case, that is required. It alleges a close relationship, a close ties between the two. It does, and that is all that it alleges. Those allegations are an information relief that the two have a relationship. How is a plaintiff to prove that without discovery? The plaintiff, I don't know. The plaintiff has to allege his complaint as best as he can before reaching discovery and then the decision whether or not to provide discoveries within the sound discretion of the court. In this case, Judge Pilmer did not deny discovery. There was no request for discovery. There was no Rule 191B affidavit that was provided. The plaintiff responded to the motion to dismiss and did not notice of any sort of motion to compel until after the hearing date. I think it's been established. I'm sorry. There was a hearing on the motion to dismiss, then a motion to compel was filed prior to a decision? There was. The motion to dismiss was fully briefed. We had a hearing date. We agreed to move the hearing date by a couple of weeks, and then the motion to compel, to the best of my recollection, was not noticed up for the day of the hearing date, the motion to dismiss hearing date. We had the hearing on the motion to dismiss, Judge Pilmer dismissed the case, and then, even though it wasn't noticed up for that date, denied the motion to compel this motion. But in any event, the decision whether or not to allow discoveries within the sound discretion of the trial court. Plaintiff here, as I think it's been established, has alleged that he was always aware of the abuse. He knew that it was harmful. When he saw his defendant weeks later, paragraph 16 of the complaint, he recognized him as his attacker, and he began shaking and crying. When he discussed the assault with the defendant, he was continuing to cry, and he alleged short-term injuries. Those allegations, under either the DP test or the Clay or the Parks test, show actual knowledge that the sexual assault happened, was wrong, and caused injury. Moving on to the equitable estoppel argument, the Supreme Court in Parks also rejected not only the discovery rule argument that the plaintiff is making in court today, but also the equitable estoppel argument. This case, like the Parks case, involved threats of reprisal, not misstatements of material fact. The Parks case, and Plaintiff's counsel began to describe it today, the threats in the Parks case were that defendant threatened to have her and her family excommunicated from the church. He threatened violence against her and himself. He threatened to send nude pictures of the plaintiff to her parents if she told anyone about the abuse. He told her that she could not escape him, and the plaintiff alleged in that case that the defendant had complete psychological control over her. And after the abuse came to light, the church in Parks performed a ceremony on the plaintiff designed to have the plaintiff forgive and forget. With those allegations, those types of threats of reprisal in Parks, the court held, reversing the lower court, that the application of equitable estoppel clearly had not been pledged. Quote, Plaintiff clearly has not pleaded the elements of equitable estoppel. She does not allege that any defendant misrepresented or concealed any material fact. Without misrepresentations or concealment of a material fact, equitable estoppel does not apply. In this case, we have two threats. One before the limitations period began in 1973 or 1974, and one after the period of limitations partly ended in 1984. Both of those threats are threats of reprisal and described as such in the plaintiff's complaint and her briefs, his briefs. Moreover, I'm sorry, Justice. When was the statute of repose repealed? Best of my understanding is that it was repealed in 1994. The applicable statute of limitations in this case is two years, and the statute of limitations that was enacted in 1983, and that was just the general personal injury statute of limitations at that time. In 1991, there was a statute of limitations that was also two years, but it was specific to childhood sexual assault cases. After 1984, and all the way up until filing of this complaint, the defendant, or I'm sorry, the plaintiff does not allege any contact between the plaintiff and the defendant, or the plaintiff and anyone who has been purportedly acting on the defendant's behalf. So from 1984 all the way through 2017, the plaintiff is in his 20s, in his 30s, in his 40s, and into his 50s. No one is taking any active steps, as the law holds are necessary, no one is taking any active steps to prevent him from getting the facts that he needs to file his cause of action. Under the cases that we've cited in our brief, Lissner v. Michael Reese, J.S. Raymer v. Village of Orlando Phillips, in order to rely on the doctrine of equitable estoppel, the plaintiff must show that he relied on an act or representation of facts and had no knowledge or means of knowing the true facts. So when the plaintiff is in his adult years, in his 20s, 30s, 40s, 50s, he has ways to find out whether the defendant's father is the sheriff who put his parents in jail. And he has ways to find out whether the state's attorney told him anything that was false. As to this rise to power argument that the plaintiff has made in their briefing before you today, from 1984 until 2007, that's not any active step. You said 2007, did you mean 2017 or 2007? No, I meant 2007, and the reason I say that is in 2007, as alleged in paragraph 10 of the complaint, the defendant retired from politics. So we have this rise to power allegation that is supposed to lend some sort of credibility to a decades-old threat. In 2007, he retires from politics, and there's no allegations of what happened between 2007 and 2015 that blocked the plaintiff from filing his lawsuit. There's nothing in the complaint during that period of time. And even if there were, and it did apply until 2015, the Steinman's case and the Kleinseer v. BNSF case explicitly hold that equitable establishment doesn't reset the statute of limitations. You don't get a fresh two years once the threat is lifted. So the defendant is indicted on May 28, 2015, and the lawsuit is filed on May 26, 2017. That was the last business day before, if it applied, the two-year statute of limitations would have run. The case law is entirely clear that, quote, this is the Steinman's case, under Illinois law, equitable estoppel does not give a plaintiff the entire limitations period measured from the date the defendant discontinues the contacts. So the one thing we do know about what a reasonable time period is is that it's not the entire two-year period of limitations. And that's what the plaintiff took in this case. So even if you were to take those critical steps of applying the discovery rule from 18 to 20, and applying the doctrine of equitable estoppel from the ages of 20 up until May of 2015, even then, equitable estoppel still would not allow this complaint because the untimely is not reasonably filed. Not filed for a reasonable period of time. I've argued on the merits of several of the plaintiff's arguments here, but there are some important waiver issues that we've raised in our brief. If you look at the plaintiff's response to the motion to dismiss before Judge Pilmer, the only thing they argued in that response brief before Judge Pilmer was the doctrine of equitable estoppel. They raised equitable tolling in a footnote, but they did not allege or argue fraudulent concealment. They did not argue the discovery rule. We've argued that failure to make those arguments results in a waiver. The discovery rule came out at the hearing, though, didn't it? There was some argument at the hearing about the discovery rule. Was there an objection from your side that it wasn't raised in the plaintiffs? We raised in the reply that had been raised in the response to the motion to dismiss. But we did not formally object. That's true, Your Honor. It's our position that the statute of limitations expired on the plaintiff's 20th birthday in 1984. At that point, under the case law and the Illinois Constitution, the defendant became vested with the right to complete dismissal. They cannot be stripped away without defending due process protections. That right belongs to all individuals, janitors, the Speaker of the House, or someone who's just completely retired. And the statute of limitations applies even when the tort alleged is loathsome. The court in Sovchak v. Emesh said, quote, statutes of limitations exist for very legitimate reasons. The law recognizes the injustice of requiring one to defend against stale claims. This is no less true where the tort alleged is particularly loathsome. The defendant here wholeheartedly denies the loathsome allegations in the complaint. But even assuming they are true, as Judge Pilmer had to do when he was evaluating this motion to dismiss, the statute of limitations applies with equal force, and his dismissal order should be affirmed. I, shockingly, have not heard any sort of beep. I think I'm going to do this quickly. Are there any questions for me, Justices? Thank you very much. Thank you. Ms. Brown, you may proceed. First of all, can I ask you, do you agree that the fraudulent concealment claim has been forfeited? No, Your Honor. I think the standards, the elements of fraudulent concealment and equitable estoppel are the same. You need a misrepresentation. You need intent that the hearer rely on their misrepresentation. You need the hearer's reliance on that representation to their detriment. And so we feel that we essentially blowed those arguments together because the elements were the same. But I didn't see the words fraudulent concealment in that plea. In which plea, Your Honor? In your response to the motion filed by defense. In the motion to dismiss? Right. I don't recall if it was in the response. I know we discussed it at the hearing. Fraudulent concealment? Yeah, I believe so, Judge. But the elements in terms of misrepresentation and intentionality were the same. I do want to address the discovery issue. We did discuss it during the argument on the motion to dismiss. And the judge's ruling on that motion, on the motion to reconsider, said that discovery was not the proper subject of a motion to dismiss. He also, when he granted the motion to dismiss in the same order, said the motion to compel was moot. So we had a motion to compel pending at the time of the argument on the motion to dismiss. The judge didn't hear the motion and said it was moot. That standard is an abuse of discretion. Where is the abuse of discretion? I think it's an abuse of discretion to dismiss our complaint without any leave to amend, without letting us take any discovery on an issue that is clearly fact-intensive. Who knew what when? Who spoke to whom? When did they speak? What was the nature of the relationship between Hastert and Amundsen? These are fact-intensive issues. And, you know, to kind of go back to the grandfather of the discovery rule in Illinois, which is Knott's case, in that case it was a case about flooding, but the court in that case specifically said this is a fact issue. How much this person knew and when about what the cause of this flooding was is an issue for the trier of fact. And similarly, I think these issues in this case are for the trier of fact. In the Steinmetz case, or the Sovchak case that counsel also cites, again, there was some emotional distress at the time that the plaintiff brought their claims and they were aware that they were damaged. The troubling thing to me about this presumption is that it essentially takes away part two of the discovery. It says as soon as you know that you're the victim of sexual abuse, your statute of limitations is run. The discovery rule says you have to know that you've been damaged and you have to know that your damage is wrongfully caused. And that's essentially taken out of this. There's no discovery rule because under those two cases, if you read them the way counsel for defendant does, the minute you turn 18, you know, if you know you've been abused, you know you've been injured. And you know your injury is caused by the abuse. And I think that's an unreasonable standard to impose on an 18-year-old. As long as you know that abuse occurred, your statute of limitations will run the minute you turn 18. Counsel argued there's facts in the complaint that show that your client knew that it was wrongfully caused and he was damaged by his reaction to seeing the defendant again a couple days later. His reaction was to being grabbed by the shoulder and pulled into the hall by Dennis Astert in front of his gym class. I thought the complaint said he recognized him as his attacker. He did recognize him as his attacker in fourth grade. He recognized that man at the time. He was grabbed by the shoulder and pulled into the hall. And when Dennis Astert asked him if he had told anyone about what happened, he cried and said no. So I don't think that that puts somebody on notice. We've also alleged in our complaint in paragraph 22, when he saw Dallas Ingmanson, Ingmanson's threats caused plaintiff further mental and emotional distress. As a result, plaintiff was traumatized, repressed the sexual assault by a doctor, and was intimidated in silence. So there was some repression of what happened to him after he was rebuffed by Dallas Ingmanson. But that would be caused by Mr. Ingmanson, not by the defendant. Well, repression isn't necessarily caused by anyone. Some sexual abuse victims repress the act of abuse. But that's not what you just talked about. You talked about an intervening event that arguably then caused a repression. Or did I misinterpret you? Yeah, he was traumatized and repressed the sexual abuse. I'm not sure it matters under the law why he repressed the sexual abuse. Does Mr. Ingmanson's relation regarding the reporting of the crime applicable or have any effect on the running of the civil action? I think it does, Your Honor, because this is a person in a position of authority whose job it is to figure out whether or not something like this is actionable. He said, if you bring these allegations, you will be sued for defamation, and you will be criminally prosecuted. So regardless of what context in which he brings these accusations, he's going to prison if he makes them. That was the message sent to him by that person. Well, what I'm getting at is the message that you just related sounds to me like you're talking about the repression of a criminal prosecution, not the repression of a civil action. Because unless Mr. Ingmanson said something to the effect that he was going to or he was the party who was supposed to bring the civil suit, I don't see how you can ascribe his statements in a way such that it would relate to and affect civil liability. What we allege, Your Honor, is upon hearing the plaintiff's report, Ingmanson threatened to charge the plaintiff with a crime and accused him of slandering Hastert's name. So I'm not sure that there's anything in those allegations that tell you that what Ingman said is, I'll only charge you with a crime if you pursue a criminal allegation. My client was, at the time, a young man. He went to a sophisticated person in a position of authority and said, This happened to me, and I want to do something about it. Most people, if they report a crime, yes, I can easily understand why they go to the state's attorney. But if they are going to attempt to initiate civil proceedings to obtain recompense for their damages, I don't know why they would go to the state's attorney. Why wouldn't they go to the yellow pages under attorneys? Well, that's where he started, Judge. When he started, he was told, If you continue to repeat these allegations, you will be thrown in jail. I will criminally prosecute you. Any repression as a result of Ingman's conduct would have nothing to do with the discovery rule between 18 and 20. That's correct, Your Honor. Any other questions? No. Thank you. Your time is up. We'll take the case under advisement. This is the last case on the call. Court is adjourned. Thank you. Thank you.